No. 22,469.

CORA J. SWADER, *Appellant and Appellee*, v. THE KANSAS FLOUR MILLS COMPANY (R. W. HOFFMAN, *Appellee and Appellant*).

### SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Negligence Found by Jury Included in Charge.* The charge of negligence fairly included failure to procure a skilled workman to build the platform by means of which the plaintiff's decedent met his death.

2. SAME—*Findings Supported by the Evidence.* The two principal findings returned by the jury were supported by the evidence, and it was error to set them aside.

3. SAME—*Verdict Supported by the Evidence.* The evidence examined, and held to support the general verdict.

4. SAME—*Ruling on Evidence Not Considered.* A ruling excluding certain evidence not covered by the assignments of error cannot now be considered.

5. SAME—*Ruling on Demurrer to Evidence.* Under the circumstances shown by the record, the defendant cannot avail himself of the claimed error in overruling his demurrer to the plaintiff's evidence.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed July 10, 1920. Reversed.

*L. B. Morris,* of Junction City, *Lee Monroe,* and *C. M. Monroe,* both of Topeka, for the appellant.

*G. W. Hurd, Bruce C. Hurd,* and *Arthur Hurd,* all of Abilene, for the appellee.

The opinion of the court was delivered by

WEST, J.: This case, originally brought against the milling company and the defendant Hoffman (*Swader v. Flour Mills Co.,* 103 Kan. 378 and 703, 176 Pac. 143), was this time tried as against defendant Hoffman only.

The petition alleged that he was the managing agent of the company and had full and complete charge of its business and the operation and management of its plant; that it was his business and duty to keep the premises in proper and safe condition; that he had full control and authority over the deceased, Henry Swader, as well as other workmen; that he will-

Swader v. Flour Mills Co.

fully and wrongfully directed that a false floor or platform in the bin be constructed, and ordered certain workmen to construct such false floor or platform, and that it was constructed in accordance with his directions. It was further alleged that the floor was constructed of material of inferior quality and apparently defective condition as to strength, and in an unskillful and unworkmanlike manner, and was insufficient to support the weight for which it was intended, all of which facts were known to the defendant or in the exercise of reasonable diligence could have been known to him.

The defendant demurred to the plaintiff's evidence. This was overruled, and the defendant stood on his demurrer and introduced no evidence.

The jury returned a verdict in favor of the plaintiff for $10,000, and in replying to questions as to whether Hoffman selected the material or any part of. it used in the construction of the false floor, or whether he directed the joists to be laid flatwise, or had anything to do with the way in which the cleats were fastened to the sides of the bin, said: "We don't know." They were also asked if at the time of the accident Hoffman had any notice or knowledge of the manner in which the false floor was constructed, the amount of wheat thereon, or any other fact or circumstance in connection with the matter at the same time not known to Henry Swader, to which the answer was, "We don't know."

"13th Question. If you find from the evidence that the defendant, R. W. Hoffman, was guilty of any act of negligence or omission of duty which resulted in the death of Henry Swader, state fully of what act of negligence or omission of duty was said defendant guilty? Ans. By not procuring a skilled workman to build said platform.

"18th Question. Did the defendant, R. W. Hoffman, direct Henry Swader to go upon the bin and level the wheat? Ans. Yes."

The defendant moved to set aside the 13th and 18th findings, which motion was sustained, also for judgment notwithstanding, which was granted. The plaintiff appeals, and alleges that these rulings were erroneous.

The defendant by way of cross appeal assigns as error the overruling of his demurrer to the plaintiff's evidence, and contends that there was no testimony to show that any administrator or personal representative had been appointed.

It was alleged in that part of the petition leveled against

the corporation that the false floors were put in the bins in order to deceive the railroad companies as to how much grain the elevator company might ship with milling-in-transit privileges. It is undisputed that Swader met his death by breaking through one of these false floors.

Without going into details, it is sufficient to say that the testimony showed that the false floor was put in in a very insecure and weak manner, so that the death of Mr. Swader was very naturally the result. .

One witness, who was working at the mill at the time of the accident, testified that R. W. Hoffman was in charge and was general manager. Another testified that he observed the condition of the false floor after the injury, and early Monday morning helped to build two other false floors in adjoining bins. It was attempted to be shown by him that Hoffman ordered these false floors, but an objection was sustained. The witness said that Kellogg built the floor which caused the injury to Mr. Swader.

"Q. Who was Mr. Kellogg? A. He was employed around there as a carpenter and millwright, whatever you might call him.

"Q. Do you know what sort of a carpenter or millwright he was? A. Well, I won't call him a first class millwright."

The defendant himself testified:

"Q. I wish you would state, Mr. Hoffman, whether or not you directed any one or ordered any one to build the false floor or temporary platform which caused Mr. Swader's death, as testified by these witnesses. A. I did.

"Q. Was it Mr. Kellogg that you ordered? A. Yes, sir."

Carl Erick testified that he carried the lumber used in building the false floor, and had been a carpenter, and that in his judgment the lumber was not first class. He overheard a conversation shortly after the accident between Hoffman and Kellogg:

"Q. What was said by Mr. Hoffman or by Mr. Kellogg at that conversation? A. Mr. Hoffman told him that it was a hell of a job he did; he killed Henry. And then Kellogg told him, he said: 'I done it just as you told me to.'

"Q. Did Mr. Hoffman make any reply to what Kellogg said when Kellogg said: 'I have built it just exactly as you told me to'? A. I never hard anything after that that he should have said. . . .

"Q. Would you have heard a reply if one had been made by Mr. Hoffman? A. Yes, sir; I would have heard him."

In explaining its rulings the trial court made some extended remarks, saying that construing "We don't know" as "No," Hoffman was not guilty of negligence in the respects covered by the five special questions thus answered. The court said the answer to question No. 18 was absolutely without any support in the evidence; that there was not a word of testimony that Hoffman directed Swader to go upon the bin and level the wheat; and that to set aside this answer would leave the verdict to rest alone on the answer to question No. 13, that Hoffman was negligent in not procuring skilled workmen to build the platform. This was said to be entirely outside of any charge of negligence made in the petition, that the charge that he willfully and wrongfully directed the false floor to be constructed did not mean that he employed the workmen, but that the company employed them.

However, the express allegation was that Hoffman himself willfully and wrongfully directed the false floor to be constructed and ordered certain workmen employed by the company to construct such floor or platform.

The court said that the fact that he gave the workmen directions did not mean that he selected them, and that the selection of nonskilled workmen was not covered by the allegations of the petition. We do not agree with this view of the matter. The averments—already set forth—were broad and comprehensive enough to cover and include negligently permitting unskilled work to be done by unskilled workmen, and very good proof of an unskilled workman is a botch job done by him, on the familiar theory that a workman is known by his chips.

In order to justify the setting aside of finding No. 18 it was necessary to construe such finding as meaning that Hoffman in express words directed Swader to go upon the bin. But in view of the evidence that he was the general manager of the elevator, and that Swader was one of his employees and did go upon the bin, it is no distortion of language or of ideas to construe this as meaning that in the general management of the elevator by Hoffman, Swader in carrying out his duties went upon this fatal floor, and under the familiar rule the answer should, if reasonably possible, be harmonized with the general verdict. Young Swader, who worked in the eleva-

tor, was asked: "Did you hear any one tell your father to level the grain or the wheat in that false floor or bottom?" and answered, "Yes, sir," but on objection of the defendant he was not permitted to say who it was. As the defendant was the general manager and in charge of the elevator, who else could or naturally would have directed Swader to go on the floor? Hoffman was the only one on the premises having any authority to give directions to Swader, and hence this testimony of the son is of peculiar significance. It is also necessary, in order to exonerate the defendant, to give the petition the very narrow construction already indicated, a construction which we hold is not justified by the language used. (*Linker v. Railroad Co.*, 82 Kan. 580, 109 Pac. 678; *McMullen v. Railway Co.*, post, p. 275.)

In deciding the matter the trial court remarked that it was a difficult matter for the jury to get away from the motive or illegal purpose for which the platform was constructed.

"The purpose for which the same was to be used, to deceive and defraud the grain inspector, and no doubt for the purpose and advantage of the Kansas Flour Mills Company, and resulting from which the unfortunate accident and death of Henry Swader resulted. And the mere fact that R. W. Hoffman is local manager of the Kansas Flour Mills at Enterprise, Kan., and may have quite general authority in conducting and controlling the running of the business at said place is not enough to raise the inference that he is to be held responsible for planning and putting in operation the purpose to be attained by means of the platform in question in this case, for such a plan and policy . . . we must look higher up to the directors or corporation officers for responsibility for such an act."

But in view of all the facts and circumstances shown, including the defendant's position, his orders, his statement after the injury, and the death-trap nature of the platform built, the jury believed and found the defendant to be responsible, and the record compels us to hold that they were justified in so doing.

Complaint is made that the testimony of the two inspectors which tended to show the purpose for which this false floor was constructed was excluded, but as there is no assignment of error touching this matter, it is not before us for consideration.

The defendant contends that the court erred in overruling his demurrer to the plaintiff's testimony, because there was

no proof of the appointment of an administrator or other legal representative. Ordinarily, this must be alleged and proved, and the plaintiff's counsel so concede. They say, however, that the action was begun against the Flour Mills Company and Hoffman, and both pleaded in bar that a certain award had been made under the workman's compensation act; that the case came to this court, and this branch of it was remanded for further proceedings. They state that the case was tried as against Hoffman on the theory that all these formal matters had been admitted. Hoffman's answer admits the death of Swader, the relationship of the plaintiff and that of the children to him, sets up an arbitration under the workman's compensation act on the part of the company, and alleges that—

"The liability of this defendant on account of the injury and death of Henry Swader has become duly litigated, adjudicated and is a bar to any action that may be had by said plaintiff."

While these allegations followed a general denial of all the averments except such as were expressly admitted, the allegation of the petition was that no administrator or other legal representative had been appointed. Counsel for the plaintiff say that in the opening statement it was suggested to the jury that all formal matters had been admitted, and that no question remained to be determined except that of the liability of Mr. Hoffman, and no exception to this statement was made by counsel for the defendant, and no objection throughout the trial to the introduction of evidence on the ground that plaintiff had not shown capacity to sue. A demurrer to the evidence was filed and argued before the court. Counsel say:

"Nothing was said throughout the argument which would, in any way, suggest to the court or to counsel that any claim was being made regarding the appointment of an administrator. No instructions were requested along that line nor was any reference, whatever, made to the proposition in the argument to the jury. Throughout the trial, the case was tried upon the theory that all of these matters had been admitted."

It is further stated that in the argument, oral and written, on the motions this point was not suggested, and that the first time it was touched upon was in the defendant's brief on cross appeal. If these things are true, it would seem that the mat-

ter is presented now for the first time, and therefore too late for our consideration. The nonappointment of an administrator or legal representative was a matter easily ascertainable by an inspection of the probate record, and we have no hint that such inspection would show anything of benefit to the defendant. In *Railway Co. v. Kansas City*, 92 Kan. 300, 140 Pac. 1040, complaint was made that no proof was offered that consent of the tax commission to exceed a certain tax levy had been received by the city. But it was said the matter could have been made clear by a telephone call, and that the point was so technical that neither party should be permitted to lose or gain thereby unless the facts justified it. And here, the technicality relied on, even if not presented too late, must, in view of the undisputed statements referred to, be deemed to have been waived.

The judgment in favor of the defendant on the findings is reversed, and the cause is remanded for further proceedings, including disposition of the defendant's motion for a new trial.